FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 DEC 18  PM 4: 52

CLERK
SO. DIST. OF GA.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| ROBERT MOSS, Jr., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No.  CV497-108 |
| | ) | [underlying CR491-176] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Movant has filed a motion to vacate, set aside, or correct his federal

prison sentence under 28 U.S.C. § 2255.  For the following reasons, it is

recommended that the motion be DENIED.


## I.    Background

Moss, a former member of the infamous "Ricky Jivens" gang, was

named with 17 codefendants in a 10-count indictment returned by a federal

grand jury in the Southern District of Georgia on September 27, 1991.

Count one charged Moss with conspiracy to possess with intent to distribute

and to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846.   Count two charged Moss with employing persons under 18 years of age in the commission of a controlled substance offense in violation of 21 U.S.C. § 861.   Count three charged Moss with using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).   Moss was also charged with using a communication facility in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 843(b).

Following a jury trial held January 13-19, 1992, Moss was convicted on all four counts.   Moss was sentenced to life imprisonment plus 60 months on March 27, 1992.   On April 24, 1992, Moss filed a motion for a new trial pursuant to Fed. R. Crim. P. 33 on the basis of new evidence.   In the alternative, Moss asked the Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.   CR491-176, doc. 557.   Moss asserted that information not disclosed to him at trial would have allowed him to forcefully impeach the testimony of CJR, a juvenile witness, who implicated him in the shooting death of Antonio Anderson.   Moss contended that the government's suppression of this favorable impeachment evidence violated

2

his constitutional right to due process of law.  See Brady v. Maryland, 373

U.S. 83 (1963).  The Court conducted an evidentiary hearing concerning

these motions on June 26, 1992.

On July 27, 1992, the Court denied Moss' § 2255 motion and motion

for new trial because there was not a reasonable probability that the

outcome of Moss' trial would have been different had the favorable

impeachment evidence been disclosed.  CR491-176, doc. 607.  The Court

reasoned that the government proved Moss' guilt on all four counts beyond

a reasonable doubt even if the juvenile witness' testimony was disregarded.

Id.  The Eleventh Circuit affirmed the Court's denial of movant's Rule 33

motion for a new trial.  See United States v. Newton, 44 F.3d 913, 917-19

(11th Cir.), cert. denied, 116 S.Ct. 161 (1995).

Movant filed a § 2255 motion in 1997, which the Court denied as

successive.  CV497-108, docs. 1, 18, 23, 24.  On July 5, 2002, movant moved

for relief under Fed. R. Civ. P. 60(b)(4), (5), or (6), contending that Castro

v. United States, 277 F.3d 1300, 1305 (11th Cir. 2002), "renders void [the]

district court's initial judgment dismissing [his] first 28 U.S.C. § 2255

motion." Doc. 36.[1]  The Court construed this motion as one made pursuant

to § 2255 and denied it as successive.  Docs. 39, 43.  The Eleventh Circuit

denied movant's certificate of appealability of this decision.   Doc. 48.

Movant filed another motion for Rule 60(b)(4), (5), or (6) relief three years

later, asserting that Gonzalez v. Crosby, 125 S. Ct. 2641 (2005), precluded

his previous motions from counting in a successive petition determination

since, following his direct appeal, he had been asserting procedural

challenges to his conviction.  Doc. 49.  The Court also denied this motion,

stating that even if movant were correct, his motion sought collateral

review under United States v. Booker, 543 U.S. 220 (2005), which is not

retroactively applicable to cases on collateral review.  Doc. 55.  See Varela

v. United States, 400 F.3d 864, 868 (11th Cir.), cert. denied,126 S.Ct. 312

(2005).

Movant, remaining resilient and undeterred, filed yet another motion

for Rule 60(b)(4), (5), or (6) relief, contending that since his 1992 Rule 33

motion should not have been counted as a § 2255 motion, and his 1997 §

2255 motion was errorneously denied as successive, he was entitled to file

---

[1]Unless otherwise indicated, subsequent citations are to documents related to movant's 1997 § 2255 motion, Civil Case Number 497-108.

4

a new § 2255 motion.  Doc. 56.  Movant's essential contention was that the Court should "reopen[] its procedurally incorrect 1998 denial of [his] first pro se § 2255 motion as being his second."  Id.  The Court noted that movant failed to identify either the relief he sought or the grounds for his asserted relief in his motion and directed him to supplement his motion. Doc. 57.  Movant complied by filing a "Motion to Supplement and Clarify Relief Sought," in which he asked the Court not to deem his 1992 Rule 33 motion a § 2255 motion per Castro and to "uncharacterize" his 1997 § 2255 motion as a second § 2255 motion and thereby grant him "one full round at federal habeas corpus."  Doc. 58.  The Court granted the motion and gave movant "his 1997-filed, § 2255 motion unshackled by the 'successiveness' restriction – in effect . . . a 'first-round' § 2255 motion." Doc. 61.  The Court directed movant to "re-present his first § 2255 motion" with "all of his § 2255 claims and include citation to the record for all factual assertions."  Id. (emphasis in original).

In response to this Order, movant filed a new § 2255 motion raising the following grounds for relief:

1.    The Court lacked subject matter jurisdiction over his criminal case.

2. The government improperly influenced the grand jury to indict him on "impermissible grounds" by eliciting testimony pertaining to uncharged acts of violence.

3. The prosecution committed various acts of misconduct during the trial depriving him of his rights to due process and a fair trial.

4. The government committed a <u>Brady v. Maryland</u> violation when it failed to disclose an immunity agreement with a key government witness at trial.

5. The Court lacked statutory jurisdiction to impose judgment on count two of the indictment because the statute was directed to individuals beyond eighteen years of age.[2]

6. The Court committed several errors in sentencing him by:
   a. incorrectly determining his criminal history category;
   b. erroneously calculating his offense level;
   c. incorrectly applying a guideline enhancement for obstruction of justice;
   d. erroneously determining the drug quantity for which he was held accountable at sentencing.

7. Ineffective assistance of counsel at trial.

8. Ineffective assistance of counsel at sentencing.

9. Ineffective assistance of counsel on appeal.

10. Movant suffered constitutional deprivations based on the "cumulative effect of all constitutional violations and unfair prejudice suffered as a whole."

11. The Court lacked constitutional and statutory jurisdiction to sentence movant to life imprisonment where that sentence "now exceeds statutory maximums authorized by law."

Doc. 65.

---

[2]Movant originally contended that the Court lacked statutory jurisdiction because the statute was directed solely to individuals beyond twenty-one years of age. Doc. 65. Movant, however, filed a "motion to correct/clarify typographical errors" in which he alleged that he mistakenly contended that the statute applied to individuals twenty-one years of age and older when, in fact, the statute is directed towards individuals eighteen and older. Doc. 72. The Court granted movant's motion to correct, and this ground reflects movant's "corrected" ground for relief.

## II.   Timeliness of Movant's Claims

The government contends that many of movant's asserted grounds for relief do not relate back to the claims that movant initially raised in his 1997 § 2255 motion and are, therefore, untimely.   Doc. 70.   Movant contends that since the Court directed him to "re-present his first § 2255 motion" and "*fully* present *all* of his § 2255 claims," doc. 61 (emphasis in original), the Court should consider all of the above listed  grounds.  Doc. 74.

Congress has adopted a one-year statute of limitations for motions brought pursuant to 28 U.S.C. § 2255.  See 28 U.S.C. § 2255, paragraph 6. Although the grounds movant raised in his 1997 § 2255 motion were timely filed, the new claims he now raises are outside the limitations period unless they "relate back" under Federal Rule of Civil Procedure 15(c).[3]  Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000).  Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading

---

[3]District courts have the discretion to apply the Federal Rules of Civil Procedure where it is appropriate to do so in a § 2255 proceeding.  Rule 12 of the Rules Governing § 2255 Proceedings, 28 U.S.C. foll. § 2255; United States v. Frady, 456 U.S. 152, 166 n.15 (1982).

arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." Davenport, 217 F.3d at 1344. In the context of a § 2255 motion, in order for an untimely § 2255 claim to relate back under Rule 15(c), "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings . . . . Instead . . . the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" Id. (citations omitted).

In his 1997 motion, movant asserted four grounds for relief: (1) his trial counsel was ineffective because he was a civil practitioner rather than a criminal attorney; (2) his counsel was ineffective because he revealed that movant's fear of Jivens caused him to commit the charged offenses; movant, to assure Jivens that he was "on his side," wrote a letter threatening the life of his counsel and counsel's family which resulted in movant receiving an obstruction enhancement; (3) trial counsel labored under a conflict of

interest after receiving a copy of movant's letter to Jivens "threatening the safety of [counsel] and his family;" and (4) the prosecution violated <u>Brady</u> when it failed to disclose evidence indicating that CJR testified falsely. Doc. 1. The government contends that the assertions that movant raises in grounds 1, 5, 6, 7, 8, 9, and 11 of his "new" motion do not relate back to his 1997 § 2255 motion under Rule 15 and should therefore be dismissed as untimely. Doc. 70.[4]

In his newly filed motion, movant challenges the performance of his appointed counsel at trial, sentencing, and on appeal. Doc. 65. In his 1997 motion, however, movant only raised ineffective assistance claims related to (1) his counsel being a civil practitioner rather than a criminal attorney and (2) his counsel's statement that movant's fear of Jivens caused him to commit the charged offenses. Doc. 1. Movant now asserts that his counsel

---

[4]Movant contends that since the Court has allowed him to "re-present" his 1997 § 2255 motion, that entitles him "to raise all claims in his first § 2255 motion." Doc. 74. The Court granted movant the opportunity to "re-present his first § 2255 motion," however, not an opportunity to file a new § 2255 motion with claims that he had not previously asserted. Doc. 61. The Court stressed the importance of the limitations and successiveness bars in the habeas reform legislation, stating the "whole point . . . is to constrain the convicted to put up or shut up, and not piecemeal-litigate claims long after final judgments of convictions have been entered." <u>Id.</u> at 5, n.7. In light of these considerations, the Court did not permit movant to add any new claims to his 1997 § 2255 motion that he regrets not raising in 1997, but rather, granted him the opportunity to fully develop the claims he raised in his 1997 motion and have the Court consider those claims on the merits.

was ineffective at trial for failing to conduct a thorough investigation of his case; failing to move for a dismissal of the indictment; failing to call favorable defense witnesses; failing to object to the relevancy of the "unnecessary details of uncharged acts of violence at trial;" failing to object to the "fatal variance of the introduction of uncharged acts of violence;" failing to object to the government's alleged failure to disclose an immunity agreement between it and one of its witnesses; failing to move for dismissal of count two of the indictment on account of its terms; and failing to call certain witnesses to refute certain testimony at trial. Doc. 65. Movant also asserts claims in his "new" § 2255 motion that his counsel was ineffective at sentencing and on direct appeal. Id. These claims do not relate back to movant's prior claims of ineffective assistance since these claims relate "to separate conduct and occurrences in both time and type." Davenport, 217 F.3d at 1346. Movant raised two ineffective assistance claims in his 1997 motion: the first related to counsel's general ability as a criminal attorney and the second contending that counsel erroneously revealed that movant committed the acts out of fear for his life, thereby forcing movant to write a letter to Jivens threatening counsel's life in order to profess his allegiance

10

to Jivens and to protect movant and his family, which resulted in movant receiving a sentence enhancement for obstruction.   Doc. 1.   None of movant's new allegations of ineffectiveness at trial, sentencing, or on appeal relate to these claims, and they are therefore untimely.   In his 1997 motion, movant had the opportunity to raise these allegations and apparently chose not to do so.   Rather, he pursued a general claim of ineffective assistance of counsel based on his appointed attorney's practice area and one specific allegation of ineffectiveness.[5]   Movant could have raised the claims he now brings forward in his "new" motion in his 1997 motion but failed to do so.   Since the claims do not relate back to the claims set forth in his 1997 motion under the <u>Davenport</u> standard, movant's asserted claims for relief in grounds 7, 8, and 9 are untimely.

Similarly, the claims movant asserts in grounds one, five, six, and

---

[5]Movant contends that since his original assertion of ineffective assistance was so general, the Court must liberally construe that claim to include all of the claims he presently advances. Doc. 74. While movant is correct that the Court must construe *pro se* pleadings more liberally, such a general claim for ineffectiveness cannot be translated into the claims movant now alleges. If the Court agreed with movant, the limitations period of the habeas reform litigation would be rendered toothless, for then a § 2255 movant could assert a general allegation of ineffectiveness within the statutory limitations period and then return at some future time to amend that motion with claims that "relate back" under Rule 15(c), thereby creating an end-run around the limitations period Congress created for such motions.

eleven do not relate back to his 1997 motion and are untimely.   These claims relate to the Court's subject matter and statutory jurisdiction over the prosecution (grounds one and five), the application of the sentencing guidelines (ground six), and a <u>Booker</u> claim that the Court lacked jurisdiction to sentence movant to life imprisonment (ground eleven). Doc. 65. Movant only raised two grounds in his 1997 motion that did not relate to ineffective assistance of counsel.   Movant contended that his appointed attorney labored under a conflict of interest after he received a copy of the letter from movant to Jivens "threatening the safety of [counsel] and his family." Doc. 1.  Movant also contended that the prosecution committed a <u>Brady</u> violation by failing to disclose certain evidence that indicated that CJR testified falsely during the trial. <u>Id.</u> Movant fails to demonstrate how his new claims arise out of the same conduct and occurrences in both time and type as his previous claims, as required for the claims to "relate back" under Rule 15(c).  Consequently, his claims are untimely.

Movant argues that the jurisdictional claims in grounds one and five can be raised at any time and cannot be forfeited, waived, or barred.  Doc. 74. "Subject matter jurisdiction defines the court's authority to hear a

given type of case . . . ." United States v. Morton, 467 U.S. 822, 828 (1984).

"Congress bestows that authority on lower courts by statute; in [criminal]
case[s], Congress has provided the district courts with jurisdiction –
'exclusive of the courts of the States' – of 'all offenses against the laws of
the United States.'" Alikhani v. United States, 200 F.3d 732, 734 (11th Cir.
2000) (quoting 18 U.S.C. § 3231).   "Subject matter jurisdiction in every
federal criminal prosecution comes from 18 U.S.C. § 3231," and in almost
all criminal cases, "[t]hat's the beginning and the end of the 'jurisdictional'
inquiry."   McCoy v. United States, 266 F.3d 1245, 1252 n.11 (11th Cir.
2001) (citation omitted), cert. denied, 536 U.S. 906 (2002).  Movant was
indicted on a four-count indictment charging him with violations of "the
laws of the United States."  The Court had jurisdiction to prosecute movant
for the offenses pursuant to § 3231, and therefore  movant's assertion that
the Court lacked jurisdiction to prosecute him is without merit.

Movant asserts in ground five that the Court lacked statutory
jurisdiction to prosecute him on the second count of the indictment because
he was not over the age of eighteen when he allegedly committed that
offense.  That count charged movant with violating 21 U.S.C. § 861(a)(1),

which makes it unlawful "for any person at least eighteen years of age" to knowingly and intentionally employ, hire, use, persuade, induce, entice, or coerce a person under the age of eighteen in drug operations. See 21 U.S.C. § 861(a)(1). The government contends that since movant was over eighteen at the time he committed the offense, his conviction was proper under § 861(a)(1).

Although movant did not pursue this claim in his 1997 motion, he previously asserted a similar contention in his direct appeal. Movant contended that "the district court should not have considered acts before his eighteenth birthday in determining the quantity of drugs attributable to him under the Sentencing Guidelines." United States v. Newton, 44 F.3d 913, 919 (11th Cir. 1995). In its opinion affirming movant's conviction, the court of appeals noted that "[w]here there is one continuous conspiracy, and the defendant has straddled his eighteenth birthday by membership in that conspiracy both before and after that significant day, his prior acts could be found to be the sole basis for guilt." Id. The court stated, however, that "[e]ven considering only [movant's] post-eighteen criminal conduct, we find there is ample evidence against [him] to substantiate the

14

sentences for the offenses of which he was convicted." Id. at 920. Thus, assuming *arguendo* that this claim is timely, movant asserted the essence of this claim on direct appeal and the court decided the claim adversely to him. The Court cannot permit movant to relitigate this claim in a § 2255 motion. See United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (refusing to allow defendant to relitigate claims decided against him on direct appeal in a collateral attack of his conviction).

Movant's challenge to the Court's application of the sentencing guidelines in ground six and Booker claim in ground eleven are likewise untimely. Movant failed to assert any challenge to the sentencing guidelines in his 1997 motion; thus, his claims in ground six do not relate back to his original motion. Although movant could not have asserted a claim directly under Booker in his 1997 motion, since the Supreme Court did not issue that decision until 2005, he failed to assert any ground for relief that alleged a Booker-like claim so that his present Booker claim could relate back to the 1997 motion. Moreover, even if this untimeliness were excused since Booker was not in effect at the time movant filed his 1997 motion, the Eleventh Circuit has held that Booker is not retroactively

15

applicable to cases on collateral review.  See Varela v. United States, 400 F.3d 864, 868 (11th Cir.), cert. denied, 126 S.Ct. 312 (2005).

Based on the foregoing, movant is not entitled to relief on grounds 1, 5, 6, 7, 8, 9, and 11 of his "new" § 2255 motion.  Movant's remaining contentions, in grounds 2, 3, 4, and 10, are properly before the Court, and the Court will now address those claims.

## III.  Analysis

### A.   Grand Jury

Movant contends in ground two that the government "insidiously poisoned federal grand jury proceedings with uncharged acts of violence which ultimately lead [sic] jury to indict [him] on impermissible grounds." Doc. 65.[6]   The government contends that this evidence, which was comprised of violent acts performed by movant and his co-conspirators, was properly presented to the grand jury because it was "part and parcel of the charged conspiracy, as borne out at trial."  Doc. 70.

"The grand jury may compel the production of evidence or the

_____

[6]Movant raised this ground as an amended fifth claim to his 1997 § 2255 motion. Docs. 6, 10, 14.

testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." United States v. Calandra, 414 U.S. 338, 343 (1974). Grand juries are afforded wide latitude in the types of evidence they consider in order to fulfill their obligation of "insuring fair and effective law enforcement" and "determin[ing] whether a crime has been committed and whether criminal proceedings should be instituted against any person." Id. at 343-44. Movant contends that the evidence of uncharged acts of violence presented to the grand jury was prejudicial to him and resulted in his improper indictment. Doc. 65. Movant attaches selected portions of the grand jury proceedings, out of sequential order, in support of his allegations. See Doc. 65, Ex. A. The testimony primarily concerns the murder of Antonio Anderson and another homicide which was believed to have been committed by "CJR," a former member of the Jivens conspiracy who entered into a plea agreement with the government to testify against movant and other members of the conspiracy, as well as other shootings allegedly performed by members of the conspiracy. Id. While the testimony may not have related to charges specifically charged

against movant, it reflected the character of the Jivens' organization, from which the charges against movant arose.  The testimony gave the grand jurors an indication of the nature of the Jivens organization, which allowed them to consider the case against movant fully before deciding whether to indict him on the specified charges.  The Eleventh Circuit commented that "[v]iolence was routine to this cocaine and crack peddling gang that . . . was reputed to be responsible for one-third of Savannah's 1991 homicides." United States v. Bazemore, 41 F.3d 1431, 1432-33 (11th Cir. 1994) (affirming movant's co-conspirators' convictions).  "[A]bsent an abuse of the grand jury process, the fact that the grand jury during the course of an investigation may have received evidence not relevant to the allegations of the indictment it eventually returns cannot justify the dismissal of such indictment."  United States v. DiBernardo, 775 F.2d 1470, 1476 (11th Cir. 1985).  Movant has failed to show that the presentation of this evidence to the grand jury resulted in any prejudice to him or otherwise abused the grand jury process, as it merely served to enlighten the grand jurors as to the true nature of the Jivens' organization.  Consequently, movant's contentions afford him no relief under § 2255.

### B.   Prosecutorial Misconduct

Movant alleges various instances of prosecutorial misconduct in ground three, including contentions that the government (1) knowingly used the false testimony of CJR at trial and refused to correct it and (2) "elicit[ed] highly inflammatory and unnecessary details of uncharged acts of violence" which resulted in a "fatal variance" between the indictment and the evidence offered at trial, amounting to a constructive amendment of the indictment.  Doc. 65.

Movant claimed in his direct appeal that the government had violated Brady v. Maryland, 373 U.S. 83, when it failed to disclose evidence indicating that CJR had testified falsely at trial.  Newton, 44 F.3d at 917-18. In challenging the denial of his Rule 33 motion, movant argued that

> after trial it was ascertained that the testimony of a juvenile witness, identified as CJR, was in all likelihood perjurious concerning Moss' involvement in the murder of indicted drug dealer Antonio Anderson.  CJR testified that he heard Moss' voice inside the drive-by car from which the fatal bullets were fired.  CJR testified that Anderson was shot by two automatic weapons, a Tech-9 and an AK 47, from a distance of ten to fifteen feet.  This testimony was later proved incorrect.  After trial, Savannah Police Department homicide records and Georgia Bureau of Investigation crime lab reports were discovered in the Government's possession by defense attorneys preparing for another case.  These documents suggested that

19

> Anderson was shot at close range, six to eighteen inches, and died from gunshot wounds from a .38 or .357 pistol, not an automatic weapon. CJR also testified that Anderson was shot about 11:00 p.m. when the actual time of death was shown by the autopsy report and Savannah homicide records to be many hours earlier.

Id. at 917-918 (footnotes omitted). The Eleventh Circuit concluded that even if the Court had corrected the Brady error in time for trial, "it would not have changed the verdict." Id. at 918. This Court, in allowing movant the opportunity to "re-present" his 1997 motion, instructed him that he must "demonstrate why he is not barred from relitigating [this claim] given the Newton panel's treatment on the merits." Doc. 61. See Nyhuis, 211 F.3d at 1343. Movant asserts that he is not relitigating his Brady claim but is instead asserting that the government knowingly suborned perjury at trial. Doc. 65.

The government maintains that "[n]o matter how [movant] slices it, this claim squarely implicates CJR's testimony." Doc. 70. Movant has consistently challenged the accuracy of CJR's testimony following his conviction, contending that his conviction is invalid because of inaccuracies in that testimony. On direct appeal, the Eleventh Circuit found that even without the testimony of CJR, "[t]he record is replete with proof of Moss'

involvement on the four counts on which he was charged." Newton, 44 F.3d at 919. The government maintains that this finding prevents movant from relitigating this claim in a § 2255 motion under Nyhuis and precludes him from being able to show prejudice resulting from the alleged error in order to satisfy Strickland v. Washington, 466 U.S. 668 (1984).

"'Not every use of false evidence entitles a defendant to [relief].'" Tejada v. Dugger, 941 F.2d 1551, 1556 (11th Cir. 1991) (citing Giglio v. United States, 405 U.S. 150 (1972)). To be entitled to relief, the government must have knowingly used false evidence and that evidence must have been material. Id.; Jacobs v. Singletary, 952 F.2d 1282, 1287 n.3 (11th Cir. 1992) ("We have previously ruled that only knowing use of perjured testimony constitutes a due process violation."). False testimony is material if there is a reasonable likelihood that it could have affected the jury's judgment. Tejada, 941 F.2d at 1556; DeMarco v. United States, 928 F.2d 1074, 1077 (11th Cir. 1991).

The court of appeals evaluated CJR's testimony and the subsequently discovered inaccuracies during its consideration of movant's direct appeal. The court stated that the "record does not display intentional concealment;

the information in question was not in the possession of Government counsel." Newton, 44 F.3d at 919. Furthermore, the court noted that more diligence would not necessarily have uncovered the material, but "would have shown CJR's testimony about the Anderson murder to have been inaccurate in several respects." Id. The testimony, however, did not undermine confidence in the outcome of the trial since the record was "replete with proof of Moss' involvement . . . without regard to CJR's testimony." Id. These findings on direct appeal preclude a finding in this Court that the government knowingly relied on perjured testimony at trial. See Nyhuis, 211 F.3d at 1343-44. As the Eleventh Circuit noted, the testimony was not the only evidence offered against movant and the jury's verdict is supported by a record "replete with proof of Moss' involvement" in the charged crimes. These findings also rebut movant's contentions that he was denied a fair trial because the government failed to correct what it knew was CJR's false testimony and referred to the false testimony in its closing argument.

Movant also asserts that the government unnecessarily and prejudicially inflamed the jury by presenting testimony and evidence about

Antonio Anderson's homicide and other acts of violence committed by members of the conspiracy at trial. Doc. 65. Movant asserts that the testimony concerning these uncharged acts of violence amounted to a constructive amendment of the indictment. Id. Movant, however, cannot show how the introduction of such evidence and testimony prejudiced him in light of the Eleventh Circuit's finding that the "record is replete with proof of [his] involvement on the four counts on which he was charged". Newton, 44 F.3d at 919. Furthermore, since movant was neither charged with nor convicted of any of the additional incidents of violence referenced by the government, no constructive amendment of the indictment occurred which compromised movant's constitutional rights.

Based on the foregoing, movant's asserted grounds for relief related to prosecutorial misconduct afford him no relief under § 2255.

## C.    Immunity Agreement

Movant contends in ground four of his § 2255 motion that the government failed to disclose a use and derivative use immunity agreement between itself and CJR that prevented CJR from being prosecuted for three murders which CJR testified to having committed. Doc. 65. The Court

previously warned movant that since he failed to raise this issue on direct appeal, he had to show cause to excuse his procedural default. Doc. 61. Movant alleges that it was only after he filed his 1997 motion that he learned, after "an alleged co-defendant obtain[ed] CJR's state court records," that the government failed to disclose this immunity agreement with CJR. Doc. 65.

While it is arguable that movant has succeeded in making his good cause showing to excuse his procedural default, the trial transcript clearly refutes movant's contention. During his testimony at trial, CJR testified that prior to his testimony against movant and the other conspiracy members, he had previously been in Court to agree to serve as a witness against the Ricky Jivens' organization. Trial Tr. at 207-08. CJR acknowledged that the judge read an order placing him in custody for five years based on his confessions to the Court. Id. Later during the course of CJR's testimony at movant's trial, CJR's signed federal plea agreement was tendered into evidence by the government. Id. at 246. Thus, CJR testified as to the contents of his plea agreement in open court and the government placed a copy of the plea agreement into the record. Movant cannot now

assert that any of his constitutional rights were violated on account of the government's failure to disclose this agreement, for the record indisputably establishes that the agreement was in fact part of the record and was before the jury for its consideration.

### D.   Deprivation of Due Process and a Fair Trial

Movant asserts in ground ten that the "cumulative effect of all constitutional violations and unfair prejudice suffered as a whole" has deprived him of his right to due process and a fair trial.  Doc. 65.  Movant explains the essence of his contention:  "since the jury has already heard all of the unfairly prejudicial and highly inflammatory evidence implicating [him] in an uncharged murder . . . it still cannot now be fairly said . . .that [he] would have been found guilty after stripping all the erroneous [sic]." Id.  Yet again, movant appears to be referring to the murder of Antonio Anderson and the testimony of CJR.  As noted above, in light of the Eleventh Circuit's finding that "the record is replete with proof of Moss' involvement on the four counts on which he was charged without regard to CJR's testimony," Newton, 44 F.3d at 919, movant's contention must fail.

## IV.   Conclusion

Based upon the foregoing, the Court finds that movant fails to state grounds upon which § 2255 relief may be granted.  Accordingly, the Court recommends that the motion be DENIED.

**SO REPORTED AND RECOMMENDED this** _18ᵗʰ_ **day of December, 2006.**

**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**